IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DUSTIN LEE LUND,

Plaintiff,

v.                                        CASE NO. 23-3184-JWL

LOU MILLER, et al.,

Defendants.

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff Dustin Lee Lund, a prisoner at the Saline County Jail ("SCJ") in Salina, Kansas, at the time of filing, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *in forma pauperis*. For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed. Plaintiff has also filed a Motion to Appoint Counsel (Doc. 3), which is denied without prejudice.

**I.  Nature of the Matter before the Court**

Plaintiff's Complaint (Doc. 1) alleges that his constitutional rights were violated as a result of exposure to black mold and inadequate health care. Plaintiff states that he was exposed to black mold when he was housed in the Ottawa County Jail ("OCJ") from August of 2022 until April of 2023. There was black mold in the shower and on the walls in the pods. Plaintiff alleges that he has experienced breathing issues, wheezing, stuffy nose, coughing up mucus, and pain in his upper back since November, 2022. He claims that he complained of the mold and filed grievances, and no action was taken. He further asserts that he put in a sick call regarding the issues he was having and was seen by the Saline County nurse on November 11, 2022. He was sent back to the OCJ.

He continued to get worse, so he put in another sick call on December 29, 2022, and was again brought to see the nurse at the SCJ in Salina.  According to Plaintiff, "they just kept saying continue to monitor and come back if it continues."  Doc. 1, at 6.  "They" also put him on ibuprofen and Tylenol.  His issues continued, and he was seen again on January 6, January 17, February 13, in March, and in April, 2023.  Finally, in April, the nurse told Plaintiff that they thought his issues had something to do with his living environment so he would not be sent back to the OCJ.  Plaintiff alleges that in May or June of 2023, the OCJ was shut down and all Saline County inmates were removed because of the black mold.  Plaintiff states that he continues to have issues with his lungs and breathing, but nothing is done.

Plaintiff names as defendants Lou Miller, APRN at the Saline County Jail, employed by Advanced Correctional Services; and Russell Thornton, Sheriff of Ottawa County, Kansas.  He claims violation of his rights under the Fourteenth and Eighth Amendments and seeks relief in the form of compensatory damages for past and present medical expenses and $250,000 in punitive damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.  28 U.S.C. § 1915A(a).  Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency.  *See* 28 U.S.C. § 1915(e)(2).  Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's

complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### A. Mold at the OCJ

Plaintiff complains that there was black mold in the shower and on the walls in the pods at the OCJ. He asserts that these conditions violated his rights under the Eighth Amendment.

To state a claim for violation of the Eighth Amendment based on conditions of confinement, a plaintiff must meet two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304

4

(10th Cir. 2005).  The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id.*  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id.*  It is not enough to establish that the official should have known of the risk of harm.  *Id.*

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson*

*v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls ... the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations ...' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiff's allegations regarding mold are sparse. He does not describe the extent of the mold or how much he spent in close proximity to it. Plaintiff does not claim the mold at the OCJ has been determined to be toxic "black mold," as opposed to mold that is simply black in color. *See Silsby v. Sloan*, 2019 WL 2107321, *3 (N.D. Ohio May 14, 2019). A "bare allegation of [the presence of] mold ... does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)).

Even taking all allegations in the Complaint as true, Plaintiff does not allege sufficient facts to state a plausible claim that conditions at the OCJ violated the Eighth Amendment; "extreme deprivations are required." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). The mere presence of mold does not suggest the OCJ contravened society's "evolving standards of decency" so as to constitute a violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 346.

Moreover, Plaintiff names Sheriff Thornton as the defendant to this count. The Complaint alleges that Thornton was aware of the mold because Plaintiff complained. However, there is no indication that Thornton was aware that the mold presented a serious risk to the health of Plaintiff and was deliberately indifferent to that risk. Thus, Plaintiff's claim fails for lack of evidence of

deliberate indifference and lack of evidence that the alleged conditions at the OCJ were a cause of his symptoms.

### B.  Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong.  "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id.* (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused

to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory."  *Lucas*, 58 F.4th at 1139.  "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."  *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability."  *Id*.  "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances."  *Id*.  (citations omitted).

Plaintiff's allegations show that he received some medical care.  His Complaint shows that he was seen by medical personnel seven times while he was at the OCJ, and it indicates that Plaintiff received chest x-rays at some point (*see* Doc. 1, at 7).  The Complaint does not demonstrate that Plaintiff was ever diagnosed with a serious medical need mandating treatment or that Plaintiff's claim involves more than a difference of opinion as to a diagnosis or proper

treatment. It may be that this is a situation where "there was the functional equivalent of a complete denial of care," but Plaintiff needs to provide more factual allegations in support of his claim.

In addition, Plaintiff needs to indicate who he claims violated his constitutional rights. He names one nurse as a defendant, but it is not clear from the Complaint if all of his allegations involve Nurse Miller.   An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).   Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### C.  Motion to Appoint Counsel

Plaintiff has filed a Motion to Appoint Counsel (Doc. 3), arguing that he needs an attorney to assist him and has been unable to obtain counsel.

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the

prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (23-3184-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **September 18, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **September 18, 2023**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 3) is **denied** without prejudice.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated August 18, 2023, in Kansas City, Kansas.**


S/   **John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**