IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DUSTIN LEE LUND,

    Plaintiff,

v.

LOU MILLER,

    Defendant.

Case No. 5:23-cv-03184-HLT-RES

**MEMORANDUM AND ORDER**

Plaintiff Dustin Lund acts pro se and sues Defendant Lou Miller under § 1983 claiming a violation of his Eighth Amendment right against cruel and unusual punishment.[1] Plaintiff is an inmate in the Kansas state prison system. Defendant is an advanced practice registered nurse who was employed by Advanced Correctional Healthcare, Inc. (ACH). ACH was contracted to provide medical care and treatment to inmates in the Saline County Jail (SCJ), and Defendant was the ACH provider for SCJ from July 2022 to July 2023.

Plaintiff was diagnosed with and received treatment for asthma in August 2023 while housed at the El Dorado County Correctional Center (El Dorado). But he had complained about shortness of breath and other breathing related difficulties as far back as November 2022 while an SCJ inmate. Plaintiff claims Defendant violated the Eighth Amendment when she failed to either diagnose his asthma or refer him to another care provider. Defendant seeks summary judgment and argues that no reasonable jury could conclude that the care she provided evidenced a deliberate indifference to Plaintiff's serious medical needs. Doc. 107. The Court grants Defendant's motion.

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes his filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

**I.     BACKGROUND**[2]

Plaintiff is an inmate in the Kansas state prison system. Plaintiff is obese (see, e.g., Doc. 108-5 at 124) and suffers from asthma. Doc. 108-8 at 14. He treats his asthma with inhalers and oral medication. *Id.* at 12-14. Plaintiff began complaining about respiratory difficulties in November 2022. But he was not diagnosed with asthma until August 2023. *See id.* at 10-14. Plaintiff's diagnosis came after he had received multiple medical examinations by several different nurses.

Defendant is an advanced practice registered nurse. Doc. 108-3 at 1. Defendant works for ACH, which contracted with Saline County to provide medical care to inmates at SCJ. *Id.* Defendant was the medical provider for SCJ. *Id.* Defendant didn't usually see patients. *See id.* Defendant worked with other nurses who did see patients. *See id.* at 1-2. Defendant's job was to review the "nursing encounters" the other nurses had with patients. *Id.* at 1. She would see patients if one of the other nurses thought she should or if the patient asked to see her. *Id.* 1-2.

Plaintiff was booked at SCJ in July 2022. Doc. 108-4 at 2-3, 5. Plaintiff was moved from SCJ to OCJ in August 2022. *Id.* at 5; Doc. 7 at 2. In November 2022 – several months after arriving at OCJ – Plaintiff began to complain of breathing difficulties. Doc. 108-4 at 119. Plaintiff claims

---

[2]  These facts are taken from the summary-judgment record and viewed in the light most favorable to Plaintiff. But the Court deems Defendant's facts admitted for purposes of summary judgment because Plaintiff has failed to properly controvert Defendant's statement of material facts. *Winter v. Mansfield*, 2022 WL 3652464, at *5-7 (10th Cir. 2022). Plaintiff's responses to Defendant's statements of material fact do not properly controvert them under the Federal Rules of Civil Procedure or this District's local rules. Fed. R. Civ. P. 56(c)(1)(A); D. Kan. R. 56.1(b)(1). The Court therefore deems Defendant's statement of fact admitted. But, for completeness of the record, the Court carefully reviewed the evidence attached to Defendant's motion and Plaintiff's response. The evidence Plaintiff relies on does not change the outcome of the motion. It deals with facts that are not material to the legal issues in the motion. As one example, Plaintiff disputes that he refused to see Defendant. He explains that he couldn't pay the $7.00 fee associated with a visit. Doc. 112 at 9-10. But these facts do not concern treatment decisions Defendant made or indeed whether Defendant refused to provide Plaintiff with care. As another example, Plaintiff insists that he made multiple requests to prison officials that Defendant examine him through (what seems to be) an internal electronic messaging application. *Id.* But this is not evidence that Defendant received requests from Plaintiff for treatment and refused. *Id.* at 1-2. And as yet another example, Plaintiff discusses at length complaints of urinary retention that were diagnosed as dehydration but that he believes were actually a urinary tract infection. *Id.* at 3-4. But Defendant's treatment of Plaintiff's urinary tract issues is not at-issue in this case.

these difficulties stem from exposure to mold in OCJ's showers and fumes from chemicals he used to clean the showers. *E.g.*, Doc. 108-4 at 82; Doc. 108-7 at 12-13; Doc. 108-8 at 10; Doc. 7 at 2, 6-7.

SCJ provided the medical care for its inmates who were housed at OCJ. Doc. 108-7 at 7-9. SCJ inmates who were housed at OCJ would be transported back to SCJ whenever there was a request for medical treatment and then returned to OCJ after treatment. *See id*. Four different nurses at SCJ saw and examined Plaintiff on six different occasions between November 2022 and April 2023, all in connection with Plaintiff's breathing-related complaints:

- LPN Rich (11/11/2022)
- RN Franco (12/29/2022)
- RN Franco (1/6/2023)
- LPN Jacy (1/17/2023)[3]
- RN Clark (2/13/2023)
- RN Franco (4/11/2023)

Doc. 108-4 at 75, 78, 81, 82, 91, 120. The nurses Plaintiff saw physically examined him on each occasion. *Id.* They recorded his vitals (including his weight and oxygen levels) and listened to his chest. *Id.*

Defendant never examined Plaintiff or spoke with him. Doc. 108-7 at 15. But she reviewed the nursing encounters he had, Doc. 108-3 at 1, and directed the nurses he saw as to the types of treatment he received, *e.g.*, Doc. 108-4 at 75, 82, 91, 120. At Defendant's direction, the nurses gave Plaintiff analgesics and/or decongestants on November 11, 2022, January 6, 2023, and January 17, 2023. *Id.* at 78, 82, 120. At Defendant's direction, chest x-rays were taken on November 11 and April 11. *Id.* at 91, 120. The nurses instructed Plaintiff on how to do breathing exercises to mitigate the risk of pneumonia. *Id.* at 120. And one of the nurses talked to OCJ staff

---

[3] The Court cannot discern this individual's last name from the record. "Jacy" is how Defendant identifies this individual. Doc. 108 at 7. But "Jacy" appears to be a first name. Doc. 108-4 at 81.

about the chemicals inmates were exposed to when cleaning the facility's showers. *Id.* at 82.[4] Defendant believed Plaintiff's shortness of breath was causally related to his obesity. Doc. 108-3 at 2.

By April 2023, Plaintiff's breathing difficulties had not resolved. Plaintiff complained it was still difficult for him to breathe and that he would become short of breath when walking upstairs and when breathing deeply. Doc. 108-4 at 91. Although the results of Plaintiff's examination were largely normal, RN Franco noted that Plaintiff got winded when breathing deeply. *Id.* Defendant therefore ordered that a chest x-ray be taken that day. The resulting films showed some decreases in lung volumes with bibasilar atelectasis when compared with a chest x-ray from November 2022. *See id.* at 91-92. Defendant ordered Plaintiff to remain at SCJ temporarily for monitoring, believing that the atelectasis might have been a sign of pneumonia. Doc. 108-3 at 2.[5]

Plaintiff never returned to OCJ. Doc. 108-7 at 18. He was instead sent to the Cloud County Jail (CCJ). Doc. 108-7 at 17. Plaintiff also complained of breathing difficulties at CCJ and was brought to SCJ from CCJ on July 14, 2023, and spoke with a nurse, but Plaintiff declined to be examined and declined an offer to see Defendant the following week. Doc. 108-4 at 97-98.

Plaintiff was transferred to El Dorado on July 26, 2023. Doc. 108-8 at 29. He was diagnosed with asthma at El Dorado – but not immediately. Plaintiff initially had no complaints about his breathing when he arrived there. *Id.* at 35. El Dorado did a medical intake evaluation when Plaintiff

---

[4] The Court notes that Plaintiff disputes whether the information given to this nurse was accurate and cites to several MSDSs that were included with the *Martinez* report previously filed. Doc. 112 at 5-6. What cleaning products Plaintiff claims he was exposed to and their composition is largely immaterial. This is not an exposure litigation. As is explained more fully below, what matters are the steps Defendant took in directing Plaintiff's diagnosis and treatment.

[5] Plaintiff asserts that this result on his April 11 films was more concerning than Defendant's characterization of the record appears. But Plaintiff offers nothing additional to substantiate this position apart from his own ipse dixit and citation to a dictionary. *See* Doc. 112 at 7-8, 10, 14.

arrived. And during the intake Plaintiff denied having persistent shortness of breath or coughing and denied having had difficulty breathing. *Id.* Plaintiff's breathing difficulties resurfaced several days later. He saw an RN on July 30, 2023, and complained of breathing difficulties. *See id* at 25-26. He was given a chest x-ray on August 9, 2023. And, on August 10, 2023, he had a nurse visit from an RN during which he also complained about difficulties breathing. *Id.* at 16-18. It was not until Plaintiff received a "chronic care" visit from a nurse practitioner on August 15, 2023, that he was finally diagnosed as having exercise induced asthma and given inhalers and oral medication. *Id.* at 10-16.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Plaintiff alleges Defendant subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to appropriately respond to his complaints about his breathing difficulties. Plaintiff complains that (1) Defendant never saw him personally, (2) the course of

treatment she prescribed for his breathing difficulties was obviously inadequate given his mold and cleaning product exposure, and (3) she failed to refer him to a care-provider who could properly diagnose and treat him when the course of treatment Defendant prescribed wasn't working.

Defendant seeks summary judgment and argues that there is no evidence from which a jury could reasonably conclude that she was deliberately indifferent to Plaintiff's condition. Defendant argues that the record establishes that she provided Plaintiff with appropriate and non-negligent medical care for his breathing-related difficulties and that Plaintiff's subsequent asthma diagnosis does not permit the inference that the treatment she provided evidenced extraordinary neglect. The Court grants Defendant's motion.

The Eighth Amendment guarantees prison inmates a right to a certain level of medical care. *Estate of Hurtado by and through Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024). But it does not provide a guarantee against an "inadvertent failure to provide adequate medical care." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97 at 105-06 (1976) (internal quotation marks omitted)). Rather, the Eighth Amendment is violated if there is "deliberate indifference to an inmate's serious medical needs . . . constitut[ing] the unnecessary and wanton infliction of pain." *Id.*

Deliberate indifference has objective and subjective aspects:

- <u>Objectively</u>, the failure to provide care must "be sufficiently serious and pose a substantial risk of serious harm." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). A "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023) (internal quotation marks and citation omitted).

- <u>Subjectively</u>, a medical professional is deliberately indifferent if she knows about and consciously disregards an excessive risk to an inmate's safety. *Estate of Hurtado*, 119 F.4th at 1236. This is a demanding standard – it's something less than an actual intent to harm but considerably more than mere negligence. There must be "an extraordinary degree of

neglect" that ordinarily does not exist when a medical professional exercises "considered medical judgment." *Id.* (internal quotation marks and citations omitted). The subjective aspect is also satisfied when a prison official "prevent[s] an inmate from receiving treatment or den[ies] him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

The Court grants Defendant's motion for summary judgment because the record, even when viewed in the light most favorable to Plaintiff, does not support a conclusion that Defendant was deliberately indifferent to Plaintiff's need for treatment. The Court assumes for the sake of argument that Plaintiff's asthma presented a sufficiently serious medical need and that the objective aspect of the deliberate indifference standard is satisfied. But even with that assumption, there must be evidence from which a jury could reasonably conclude that Defendant was subjectively deliberately indifferent to that need. And here there is no such evidence. The record simply does not show that Defendant knew about and consciously disregarded an excessive risk to Plaintiff's safety. In fact – as Defendant persuasively argues – the record demonstrates the opposite.[6]

The summary judgment record indicates that in exercising her considered medical judgment Defendant believed Plaintiff's breathing difficulties to be related to his obesity. Plaintiff weighed nearly 300 pounds. And – as Defendant points out in the affidavit she attaches to her motion – this excess weight can put pressure on one's lungs when lying down. Plaintiff therefore received instruction on how to do breathing exercises and was given pain medication. The record

---

[6] Plaintiff argues that the subjective aspect of his Eighth Amendment claim is satisfied through the "gatekeeper theory." His position is that Defendant ought to have referred him to someone who could appropriately diagnose and treat his shortness of breath. Plaintiff attaches the wrong label to the theory of liability he is pursuing. As the Tenth Circuit has explained, the gatekeeper theory usually applies to non-medical professionals who have control over an inmate's ability to receive medical care. "Ordinarily, a medical professional will not be liable for this . . . kind of deliberate indifference[ ] because [the medical professional] is the person who provides the treatment." *Sealcok*, 218 F.3d at 1211. The gatekeeper theory is applicable to medical professionals if the "professional knows that [its] role in a particular medical emergency is <u>solely</u> to serve as a gatekeeper for other medical personnel capable of treating the condition . . . ." *Id.* (emphasis added). The gatekeeper theory is inapplicable in this case because Defendant was the person providing Plaintiff with treatment.

also indicates Plaintiff was physically examined by nurses acting under Defendant's direction when he seen for breathing related difficulties. The nurses Plaintiff saw consulted with Defendant. And the record indicates that medical judgment was exercised. Chest x-rays were taken and evaluated. And on April 11, when Defendant believed that Plaintiff exhibited an increased risk of developing pneumonia, Defendant responded accordingly by ordering Plaintiff to remain at SCJ for monitoring. It would be unreasonable to infer in light of these facts that Defendant's treatment of Plaintiff was deliberately indifferent to Plaintiff's need for medical treatment.

A different diagnosis with a different treatment protocol for Plaintiff's shortness of breath isn't evidence per se of a conscious disregard of a known, excessive risk to Plaintiff's safety, nor is the fact that Defendant knew about Plaintiff's concerns about certain environmental exposures at OCJ. There is no evidence in the record that either the mold or fumes Plaintiff claims to have been exposed to presented non-trivial risks to his safety (let alone excessive risks), given his breathing difficulties. And even if there were, there is no evidence in the record that Defendant knew what those risks were and then chose to disregard them. Deliberate indifference has been found where a medical professional (1) "recognizes an inability to treat [a] patient but declines or unnecessarily delays referral," (2) "fails to treat a condition so obvious that even a layman would recognize [it]," and (3) "completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Estate of Hurtado*, 119 F.4th at 1237 (internal quotation marks omitted). The record demonstrates a significant difference between the care Plaintiff received and care that has been found deliberately indifferent. When viewed in the light most favorable to Plaintiff all the record shows is that the "course of treatment" he received from Defendant might have at best been "inadequate after [Defendant] exercise[d] [her] medical

judgment . . . ." *Lucas*, 58 F.4th at 1137. What Plaintiff complains of comes nowhere near the level of extraordinary neglect necessary to violate the Eighth Amendment.[7]

Plaintiff is clearly dissatisfied with the care he received from Defendant. But an inmate's receipt of care he believes might have been better or more thorough, on the one hand, and care so deficient that it violated the Eighth Amendment, on the other, are vastly different things. An inmate's satisfaction with his medical care is not the constitutional measure. Deliberate indifference to a serious medical need is. The Eighth Amendment only demands that an inmate not be subjected to the unnecessary and wanton infliction of pain. *Estate of Hurtado*, 119 F.4th at 1236. In this case, even when the record is viewed in the light most favorable to Plaintiff, the Court sees no evidence to support the conclusion that Defendant violated the constitutional standard. The Court therefore grants Defendant's motion for summary judgment.

## IV. CONCLUSION

Defendant is entitled to summary judgment because no jury could reasonably conclude based on the record before the Court that Defendant was deliberately indifferent to Plaintiff's serious medical needs.

THE COURT THEREFORE ORDERS that Defendant's motion for summary judgment (Doc. 107) is GRANTED.

---

[7] Although it does not decide the issue, the Court nevertheless notes its considerable skepticism that Defendant's course of treatment could even support a professional negligence claim. The Court has two reasons. First, just as a failure-to-diagnose is not a per se violation of the Eighth Amendment, neither is it medical negligence per se. Even when there has been a misdiagnosis or a failure to diagnose, it is still necessary for an expert to opine as to the applicable standard of care. *E.g., Robles v. United States*, 703 F. App'x 652, 654-55 (10th Cir. 2017). Or, absent expert testimony, for the professional's care to have been so obviously unreasonable that its deficiency and poor results "would be apparent to and within the common knowledge and experience of mankind generally." *Id.* (internal quotation marks omitted). Second, Defendant offers expert evidence that her treatment of Defendant satisfied the applicable standard of professional care. Doc. 108-9. This evidence is uncontroverted, and the Court sees no reason to discount it.

THE COURT FURTHER ORDERS that Defendant's motion to seal (Doc. 109) is GRANTED. Exhibits Doc. 108-4, Doc. 108-5, Doc. 108-6 and Doc. 108-8 shall remain under seal because they contain an inmate's medical records. The rest of Doc. 108 is unsealed.

THE COURT FURTHER ORDERS that Plaintiff's motions to have certain documents made part of the summary judgment record (Doc. 113, Doc. 114, Doc. 118) are also GRANTED.

Dated: May 8, 2025     /s/ *Holly L. Teeter*
    HOLLY L. TEETER
    UNITED STATES DISTRICT JUDGE